## HAMILTON v. SELIG.

(District Court, S. D. New York. February 29, 1912.)

1. CORPORATIONS (§ 253*)—INSOLVENCY—STOCKHOLDERS' LIABILITY—ASSESSMENT JUDGMENT—CONCLUSIVENESS.

Laws Minn. 1899, c. 272, § 5, imposes a stockholder's liability on stockholders of business corporations, including stockholders who are liable to the corporation or its creditors for, or upon, or growing out of, or in respect to, stock or shares at any time held or owned by such stockholders, and Rev. Laws Minn. 1905, § 2864, prescribes that the transfer of stock shall not exempt a stockholder from liability on all the indebtedness existing at the time of the transfer. *Held,* that such liability was imposed on stockholders of an insolvent corporation who were such at the time remaining indebtedness was created, though they transferred their shares prior to the institution of insolvency proceedings, and hence, not only the stockholders who were such at the date of such proceedings, but also the prior transferring stockholders, were concluded by a judgment in receivership proceedings finding that an assessment was necessary to pay the claims, and also by the included proposition that there were claims unpaid which existed at the time of the transfer.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1024–1030; Dec. Dig. § 253.*]

2. CORPORATIONS (§ 244*)—STOCKHOLDERS' LIABILITY.

Under Rev. Laws Minn. 1905, § 2864, providing that the transfer of corporate stock shall not exempt a stockholder from liability on all the indebtedness existing at the time of the transfer for which the stockholder would otherwise be liable, a stockholder of a corporation belonging to the class in which stockholders are subject to personal liability takes his stock subject to a continuance of his liability after a transfer in case there remain debts of the corporation incurred while he was a stockholder.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 960–977; Dec. Dig. § 244.*

Liability of transferrors and transferees of corporate stock for assessments, see note to Campbell v. American Alkali Co., 61 C. C. A. 322.]

3. CORPORATIONS (§ 253*)—INSOLVENCY—RECEIVERSHIP PROCEEDINGS—STOCKHOLDERS' LIABILITY—ENFORCEMENT—JUDGMENT.

Laws Minn. 1899, c. 272, imposes a personal liability for debts on stockholders of certain corporations for, upon, or growing out of, or in respect to, the stock or shares at any time held or owned by such stockholders, and Rev. Laws Minn. 1905, § 2864, declares that the transfer of stock shall not exempt a stockholder from liability on all the indebtedness existing at the time of a transfer of his stock. *Held* that, where in receivership proceedings an assessment was levied on transferring as well as existing stockholders, the decree constituted a conclusive adjudication as against transferring stockholders that there were debts of the corporation requiring an assessment of the amount of the levy at the time of the transfer, so that, in an action to enforce the assessment, the receiver was not required to prove such fact; the words "persons liable as stockholders," as used in the decree levying the

---

assessment, including persons who had transferred their stock, and were subject to assessment as well as existing stockholders.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1024–1030; Dec. Dig. § 253.*]

4. CORPORATIONS (§ 253*)—STOCKHOLDERS' LIABILITY—CONCLUSIVENESS OF JUDGMENT—COLLATERAL ATTACK.

Where a state court in receivership proceedings against a corporation had jurisdiction to make an assessment on stockholders, and to determine as against stockholders who had transferred their stock prior to bankruptcy that debts created prior to the transfer remained unpaid, whether the court erred in determining such question was not open to collateral inquiry in an action by the receiver to recover the assessment.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1024–1030; Dec. Dig. § 253.*]

At Law. Action by Charles E. Hamilton, as receiver of the Evans-Johnson-Sloane Company, against Arthur L. Selig. Judgment for complainant.

This is an action against the defendant upon his statutory liability as a stockholder of Evans-Munzer-Pickering Company, a corporation organized under the laws of the state of Minnesota. The corporation was incorporated in April, 1902, and on May 10, 1904, its name was changed to Evans-Johnson-Sloane Company. On April 23, 1902, the defendant purchased 50 shares of stock in the corporation of Evans-Munzer-Pickering, which he sold on September 24, 1904, to one Max Meyer. On September 25, 1905, a petition in involuntary bankruptcy was filed against the Evans-Johnson-Sloane Company, after adjudication a trustee was appointed, and its assets distributed. Thereafter, on May 8, 1906, a creditor of the Evans-Johnson-Sloane Company filed a bill in the district court of Ramsey county, Minn., asking for the appointment of a receiver against the Evans-Johnson-Sloane Company. On June 23, 1906, a receiver was appointed and the proceedings instituted contemplated by chapter 272, Laws of 1899, State of Minnesota, then contained in sections 3184–3190 of the Revised Laws of Minnesota for 1905. On April 20, 1907, the said district court by a decree in that action determined and allowed claims against the corporation amounting in the aggregate to $146,169.51 as contained in the schedule of claims thereto annexed. This schedule set forth the names of all the claimants, the number of claims, the amount of the claims, exclusive of interest, the amount of the interest of each claim, and the amount of each claim, including interest. In the case of some of the claims it appears from this schedule that they were incurred prior to September 25, 1904, and that the interest allowed was from a date prior to that time. On July 6, 1906, the receiver appointed in that suit, who is the plaintiff in this action, filed his petition, asking for an assessment upon the stock of all existing stockholders, of whom he alleged the defendant to be one. On the same date the district court of Minnesota ordered that notice should be given to all such stockholders by publishing the same in a daily newspaper in the county, and causing a copy of the order to be mailed to each of such stockholders and creditors, and thereafter, on September 4, 1906, the said district court directed that an assessment equal to the par value of each share be made on each share and against the persons and parties liable as stockholders of said defendant corporation for, upon or on account of such shares, and that every person liable as such stockholder of the defendant pay to the receiver $100. This decree contained the recital that it was made upon proof of due service and notice as prescribed in the petition.

In the trial of this action the plaintiff proved that the defendant purchased 50 shares of stock on the 23d day of April, 1902, and sold it on the 25th day of September, 1904. He then put in evidence of the judgment roll in the Minnesota suit, and rested. He did not prove that the transfer of the defendant was made to avoid the liability of the owner. He did not

prove that any of the indebtedness existing at the time of the assessment by the Minnesota court existed on September 25, 1904, except as the roll proved it in that suit. Both parties moved for a verdict.

James E. Trask, for plaintiff.
Abram I. Elkus, for defendant.

HAND, District Judge (after stating the facts as above). Two questions are raised by this action: First, whether the district court of Minnesota had jurisdiction to determine not only the amount of the liability of a past stockholder, supposing that some of the debts antedated his transfer of stock, but, in addition, that some of the debts did in fact antedate that transfer; second, whether the suit in Minnesota intended to conclude the defendant upon that question.

[1] As to the first question, I do not doubt that the court had jurisdiction. Since Bernheimer v. Converse, 206 U. S. 516, 27 Sup. Ct. 755, 51 L. Ed. 1163, it must be accepted that for one who is a stockholder at the time of the dissolution all decrees in the parent suit are conclusive upon all matters relating to the amount of, the propriety of, and the necessity for, the said assessment, and that section 5 of chapter 272 of the Laws of 1899 is constitutional, and can be enforced as against such stockholders. The question in the case at bar is whether the statute has the same effect against one who has ceased to be a stockholder. Section 2864 of the Revised Laws of 1905 prescribes that the transfer of stock shall not exempt the stockholder from liability upon all the indebtedness existing at the time of the transfer. As to those, therefore, his relation to the corporation remains just as it did before the transfer. Section 1 of chapter 272 of the Laws of 1899 includes stockholders who are liable to the corporation or its creditors "for, or upon, or growing out of or in respect to the stock or shares at any time held or owned by such stockholders," clearly contemplating others than present stockholders.

[2] Moreover section 2864 was, in substance, in existence when Selig took his stock. Therefore he took it subject to a continuance of his liability after a transfer, and it begs the question to say that he had severed his connection with the corporation in 1904. The statute says quoad then existing indebtedness he did not. This being so, he was as much and as little subject to the estoppel of a judgment as a stockholder who remained such. The measure of his liability was different, but that is only a guide to the court which makes the assessment, and cannot be thought to limit its power to determine the amount. Otherwise, the whole assessment would be tentative as against a past stockholder, which cannot be the law, though the defendant seems to urge it in his brief. The theory of the estoppel of the judgment against the corporation upon the stockholder depends wholly upon his voluntary association of himself with the incorporators by the act of taking stock. Whatever be the contract which he makes at that time, it is held to make him privy to a determination of the corporate assets, the deficiency, and the propriety of an assessment against him. Now there is no conceivable reason, at least that I can see, why a stockholder who remains liable for a portion only of the debts, if there are such debts, should not be bound, while a

stockholder who is liable for all debts, if there are any debts, should be bound by such a determination. Each is no doubt possibly subject to assessment when he is not liable at all, for the existence of debts is a condition to his liability, but it is no more so in one case than in the other, and the theory so far as it is developed, that each is concluded by his consent in respect of the amount and existence of corporate debts, applies equally to each. There seems to me to be no possible principle which justifies saying that the past stockholder cannot be concluded by a determination that some of the indebtedness was in existence at the time of his transfer, provided the statute when he bought his stock said that a transfer should not exempt him. I do not, therefore, think that the court lacked jurisdiction to conclude the defendant merely because he had sold his stock.

The more important question is whether the statute permitted, and the decree in the parent suit intended, to include among those liable as stockholders all who had transferred their stock. The decree of July 6, 1906, follows the language of the statute ipsissimis verbis. It lays an assessment upon each share of stock and upon each person liable as a stockholder, and then it provides "each and every person liable as such stockholder of said defendant pay" the receiver $100 for each share of stock upon which he is liable as a stockholder. The interpretation of this decree in Hamilton v. Levison was too broad, for it did not mean to lay an assessment upon every person named in the schedules for the number of shares set opposite his name. That language, however, was irrelevant to the decision in that case, because it was proved that Levison was a stockholder, and that there were of the debts in existence at the time the suit was instituted some which antedated his transfer. It was proved, therefore, in that case dehors the record under any construction that he was a person liable as a stockholder. The defendant in this case urges, however, that, although it has been proven that he was a stockholder, this did not make him liable as such without the added proof that some of the existing debts antedated his transfer, or, in the alternative, that his sale was for the purpose of avoiding his liability. I have already decided that the absence of such proof did not prevent the jurisdiction of the court, provided the statute meant to give it and the court meant to exercise it. There can be no doubt that, provided the defendant was within the class indicated by the decree, he cannot now question the fact that the debts for which he was liable would require a full assessment upon him and his shares.

[3] The sole question, therefore, narrows to this: Was it necessary, in order to bring him within the terms of the decree, that the plaintiff should show the existence of some of the present indebtedness at the time of this transfer? This question in turn depends wholly upon the meaning of the phrase, "persons liable as stockholders." A past stockholder is liable as a stockholder for all past debts. Gunnison v. U. S. Investment Co., 70 Minn. 292, 73 N. W. 149. He is among the class, therefore, of those "liable as stockholders," at least in some cases. It is urged that his liability is conditional upon the existence of past debts, and this is true, but, as I have already shown, the same

thing is true of the liability of present stockholders, for they are liable only in case of the present existence of some debts. Why should the words be construed conditionally in one case, and not in the other, when a similar fact, as one chooses to take it, is equally a condition or a limitation upon the liability itself? Furthermore, consider the purpose of the statute itself which was to adjust the burdens equitably between all those who must in the end bear them. Such an adjustment was inevitably subject to defeat in case the court mistook those who were or had been stockholders, for the acceptance of stock was a condition of any jurisdiction, and for that reason the decree would follow the limitation of jurisdiction by assessing those only who are liable as stockholders. It would have been idle to make the decree speak more broadly than the jurisdiction of the court extended; on the other hand, the suit might fail in its purpose of an equitable adjustment if it subjected its calculations to any more chances than were necessary. The court's duties were to determine the indebtedness and the assets of the corporation, and to apportion the deficiency upon all those stockholders liable who were financially responsible in proper proportions. As the assessment was necessarily somewhat provisional, the court might return to the stockholders any surplus. To subject its assessment to the chance of defeat in case the receiver did not prove aehors the record the existence of some indebtedness at the time of the transfer of a past stockholder would be unnecessarily to introduce a serious element of uncertainty into its calculations. The nature of the undertaking required as much certainty as was compatible with the power of the court, which included all the facts other than those upon which its jurisdiction depended; that is to say, all facts except whether the person assessed had ever actually accepted the stock, together with the personal defenses mentioned in Great Western Telegraph Co. v. Burnham, 162 U. S. 339, 16 Sup. Ct. 850, 40 L. Ed. 991, and Straw, etc., Mfg. Co. v. Kilbourne, 80 Minn. 125, 83 N. W. 36, which clearly could not be ascertained in advance. At least it is not to be supposed that the court only intended to make recovery conditional upon reproving a fact which it had already found, and necessarily found, and upon which its jurisdiction was not dependent, a fact, moreover, which concededly need not be reproven as against the great mass of stockholders. I do not rely in this conclusion on the change in section 3186, which seems to me here inapplicable.

I therefore think that by the term "persons liable as stockholders" the court meant to assess all those who should be shown to be holders of stock at the time of the decree, or to have held stock theretofore, and to leave open only that fact, the extent of their holdings, and the personal defenses above mentioned. Whether the court in fact was wrong in assessing the defendant for the full amount of the shares because of the indebtedness existing at the time of the transfer is not a question now open for discussion, under too obvious principles.

[4] Nor need I consider whether the basis of the determination was that the prior debts needed his contribution, or that his transfer was not bona fide. Given jurisdiction and the actual determination, the

course of reasoning by which the result was reached is not open for collateral inquiry.

The remaining question relates to the statute of limitations, which I have not examined, because I regard myself as concluded by Bernheimer v. Converse, supra. Whether the Supreme Court was in error in regard to the decision of the Court of Appeals is not a question which is open before me, because the disposition of that case required that decision, and it is authoritative upon me. If the defendant wishes in this case as was done in Bernheimer v. Converse to raise the question of the constitutionality of the statute, as I have interpreted it, he may do so, and the question can go directly to the Supreme Court where that matter may then be reargued in the light of the decision of the Court of Appeals of the state of New York. I therefore will direct a verdict for the plaintiff for the sum of $5,000, with interest and costs.